## John Boden, Appellee, v. Kewanee Coal & Mining Company, Appellant.

### Gen. No. 5599.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

. 2. VERDICTS—*when answer to special interrogatory not inconsistent with.* If a special interrogatory and answer thereto are not such as to preclude other conclusions by the jury which would support the verdict the same are not inconsistent with the. general verdict.

3. VERDICTS—*when not excessive. Held,* in an action for personal injuries, that a verdict for $11,000 was not excessive where it appeared that the plaintiff before his. injury was a strong healthy man 36 years of age and earned $2.36 per day and where it further appeared that his left thigh bone was crushed, that he was under medical care for a long period, suffered much pain and sustained permanent injuries.

4. INSTRUCTIONS—*when giving, calculated to mislead will not reverse.* Notwithstanding an instruction has been given which was calculated to mislead it will not effect a reversal where other instructions given preclude the likelihood of such misleading instruction having been prejudicial.

5. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its contents are substantially contained in another or other instructions given.

Action in case for personal injuries. Appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912. Rehearing denied April 18, 1912. *Certiorari* denied by Supreme Court (making opinion final).

MORSE & DEMERATH, STURTZ & EWAN and JOHN T. CUMMINGS, for appellant.

N. F. ANDERSON, THOMAS J. WELCH and JAMES H. ANDREWS, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This case was before us in Boden v. Kewanee Coal and Mining Company, 157 Ill. App. 484, and the main facts are there stated, and need not be repeated here. That was a second trial. Upon a third trial appellee had a verdict and a judgment for $11,000 from which defendant below appeals.

The evidence favorable to appellee tends to show that at the time of the accident he had been working for appellant about two weeks, but had been trimming coal cars only a little over one week; that he did not know that a car had run away on the track next to him; that there had been no runaways while he had worked there; that if Terry said anything to him about the runaway he did not hear it; that while he was trimming the car about 1,200 pounds of coal were dumped into the chute and upon his car in every two-thirds of a minute; that he had to remove from this coal the slate and clay and dirt, and every few minutes had to go to the brake and release it and let the car move forward a few feet, so that the coal from the chute should fall into the part of the car not yet loaded; that while his car was being filled two engines were being operated there, a hoisting engine and the fan engine, each of which made a loud noise; that the coal passing over the iron chute and iron apron made a loud noise; that the air was filled with coal dust from the coal thus emptied into the car; and that all these conditions might well have prevented appellee from seeing or hearing the runaway car and from hearing anything said by Terry; that Bauer occupied a position as vice-principal, knew that the other car had run away, and that the switch where it stopped was in plain view from his elevated station if he had looked that way; that Bauer directed appellee to take the car down and that appellee acted in obedience to the directions of appellant through the vice-principal in taking the car down; that Bauer as well as Deming, the superintendent, knew that cars frequently ran away down the incline; and that, while appellee had

been trimming cars, he was the only one who had taken loaded cars west down the incline. This evidence, if believed by the jury, warranted the jury in finding that appellant was negligent in not ascertaining the position of this runaway car before ordering appellee to take his car of coal down the incline, and was negligent in ordering it taken down without ascertaining where the runaway car was, and in not warning appellee that the runaway car was at the switch and to stop his car before it reached that point. Upon some of these matters the testimony favorable to appellee was undisputed and upon others the facts were disputed. When Bauer gave appellee the order to take this car of coal down the incline, appellee stepped to the west or front end of the car, got down upon the narrow platform with his back to the west and with his right foot in front of the brake standard, placed his left foot upon the dog or clutch, which held the brake, which was then set, released the clutch with his left foot, and thus released the brake, before the empty coming down from the east struck it, so that it would thereby be started in motion by the impact of the empty car, and after the car had gained sufficient momentum to take it down to the place where he was to leave it he then began setting the clutch and gradually tightening his brake to prevent the car from gaining too much speed. Just before he struck the runaway car at the switch, the sole of his shoe became caught between the clutch and the brake and so remained till others took his foot out after the accident. He did not know of the presence of the runaway car at the switch or that any car had gone down the incline except those which he took down, till just as or just before his car struck the runaway car and inflicted the injuries upon him. If appellee had been looking west instead of standing with his back in that direction he would have seen the car at the switch and could have stopped the car upon which

he was riding and could have prevented the collision in which he was injured. Appellant contends that his failure to look ahead was such a lack of due care as prevents his recovering damages for his injuries. We are of opinion that the jury were warranted in finding from all the evidence that the position he occupied while taking down his car was at least the most natural for him to occupy while performing the duty of controlling and retarding the speed of the car, and that, in view of the fact that he had never known of a runaway car and that no car had ever gone down the incline while he had been at that work, except such as he conducted down to its proper place, it was a question of fact and not of law whether he exercised due care. Three juries have found verdicts for appellee, and the last two verdicts have been approved by the trial judge. At the last trial appellant submitted nine special interrogatories to the jury and obtained nine answers deciding the material questions in favor of appellee. We are of opinion that we would not be justified under the evidence in interfering with the conclusions of the jury upon the questions of fact. The first question was this: "Was the leaving of the slack cars at the switch the proximate cause of plaintiff's injury?" The jury first answered this: "Not within itself." Upon the demand of appellant the jury were required to retire and answer this question "yes" or "no" and they answered it "yes." It is contended that this is inconsistent with the general verdict. We are of opinion that this position is not correct, and that that answer does not relieve appellant from responsibility for the accident. The jury did not find that the leaving of the cars there was the *only* proximate cause of appellee's injury. It is evident that that and the failure to warn appellee and the order to take the car down without warning him, all combined to produce the injury.

Complaint is made of the giving of the first instruc-

tion requested by appellee. It told the jury that if appellee was directed by a vice-principal of appellant to run the coal car west upon the track, appellee was not bound to make a critical examination of his surroundings to discover unusual dangers, but had the right to assume that appellant had taken reasonable precautions to protect him from unusual dangers and was using reasonable care to keep the place where appellee performed his work reasonably safe. This instruction stated a correct legal proposition, but might be understood by the jury to mean that appellee was not obliged to look ahead as he went down the incline with his car. The court instructed the jury at the instance of appellant in No. 2 that appellee was bound to exercise for his own safety such care as persons of ordinary prudence and intelligence would ordinarily exercise for their own safety under the same conditions; in No. 5 that if appellee could have avoided the injury by the exercise of ordinary care on his part and failed to exercise such care, he could not recover and that on this question of due care for his own safety the burden of proof was on appellee; in No. 8 that appellee, in order to recover, was required to prove by a preponderance of the evidence several propositions, one of which was that appellee was exercising ordinary care for his own safety at and just before the accident; in No. 9 that, if the injury to appellee was the result of one of the ordinary perils incident to the service he was performing and if such peril was known to appellee or could have been known to him by the exercise of ordinary care, then he cannot recover; in No. 10 that appellant was only required to exercise ordinary care towards appellee and that that was such care as a person of ordinary prudence would exercise under like circumstances and, if appellant exercised ordinary care to avoid injuring appellee, they must find appellant not guilty; in No. 16 that if appellee could by the exercise of ordinary

care have avoided the injury and his omission to do so directly contributed to the injury, then he could not recover; in No. 19 that to recover appellee must prove by a preponderance of the testimony that the leaving of the slack cars at the junction of the lump and the slack tracks made it dangerous for appellee to perform his duties and that appellant had notice or knowledge thereof or should have had and that appellee did not know of the danger and had not equal means with appellant of knowing thereof; in No. 20 that, if appellee was so situated that by the use of ordinary care and caution he could have known of the location of the car into which he ran, then it was his duty to have exercised such care and caution and if he did not perform that duty he could not recover. Other instructions, given at appellant's request, were similar in meaning. We conclude that in view of all these instructions the jury could not have been misled by appellee's instruction No. 1.

Appellant contends that the court erred in refusing instruction No. 24, requested by it, which was to the effect that if the accident was caused by the negligence both of appellee and of a servant of appellant, the verdict must be for appellant. This stated a correct proposition of law and might well have been given. But the jury were told in many instructions given at the request of appellant and in many different forms, that if appellee was negligent or failed to exercise ordinary care for his own safety, then he could not recover, even if appellant was also negligent, and we are of opinion that appellant was not injured by the refusal of No. 24.

It is contended that the judgment is excessive. When appellee was injured he was a strong, healthy man, 36 years of age, weighed 220 pounds, and earned $2.36 a day. His left thigh bone was crushed. He was in a hospital eight or nine weeks, and suffered pain continually, and had daily service by a surgeon

for about 96 days. For about the last three weeks that he was in the hospital he moved about in a wheeled chair, and after he came out of the hospital he walked on crutches and sat about at home with his leg stretched out straight on a board. After five or six months he worked at running an engine at a coal mine where he could sit down and have his left foot elevated on a box and do the work with his hands and his right foot. He did that work about eight months and stopped because the work there was finished. He went to work firing a boiler and shoveling coal and remained at that work only one day, as he could not stand it. He could not walk on crutches and wheel the coal, and suffered pain all the time, and was too weak to do that work. He then went to work at check weighing for the miners, which work he did while sitting down. He continued at that about a month and stopped because his leg was swollen all the time and he could not climb the stairs to the tipple house where the weighing was done. He has had ulcers or running sores on his left leg ever since he was injured, 35 or 40 in all. There has been a constant discharge of pus and blood from these sores. Small particles of bone have come out a number of times since. His general health has been much affected. Some nights he does not sleep at all on account of fever, and twitching and throbbing in his leg. The leg has to be regularly dressed with a salve and washed with alcohol, and the salve, alcohol, bandages and gauze cost $6 or $7 per month. His physician's bill was $300 which he paid, and he paid $100 upon his hospital bill. He weighs from 180 to 190 pounds; at the time of the trial was unable to do any work; and his leg was not as well as the year before. The leg is bowed about three inches and is an inch and a half shorter than the other leg and his knee is stiff. The surgeon who attended him at the hospital testified that the continued supperation was due to

infection which appellee got at the hospital. Another surgeon testified that his condition was due to necrosis or death of the bone, resulting from the fracture received at the time of this injury, and that the results were liable to continue indefinitely, and the discharge from the leg to be chronic. Appellee was injured on May 9, 1906, and the last trial was in February, 1911, nearly five years after the injury. We are of opinion that the verdict and judgment are not unreasonable in amount for the injury and the pain and the suffering already sustained and that which is likely to follow during the rest of appellee's. life.

The judgment is therefore affirmed.

*Affirmed.*